UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS HAMILTON,

                              Plaintiff,            Case # 18-cv-1470-FPG

v.                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

**INTRODUCTION**

On February 3, 2015, Plaintiff Douglas L. Hamilton, Jr. protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (the "Act"), alleging disability beginning January 31, 2014. Tr.[1] 148-54. After the Social Security Administration ("SSA") denied his claim (Tr. 69-83), Plaintiff appeared, with counsel, at a hearing before Administrative Law Judge Paul Georger ("the ALJ"). Tr. 23-68. On September 5, 2017, the ALJ issued an unfavorable decision. Tr. 10-18. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-7. Plaintiff then appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 14, 16. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 9.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 1383(c)(3).

1

## LEGAL STANDARD

### I.     District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him to perform the requirements of his past relevant work; and (5) whether the claimant's RFC permits him to perform alternative substantial gainful work which exists in the national economy in light of his age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found Plaintiff had not engaged in gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Plaintiff had several severe impairments, including degenerative disc disease of the cervical and lumbar spine, anxiety, depression, and post-traumatic stress disorder ("PTSD").[3] Tr. 12. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 12-13.

Next, the ALJ determined that Plaintiff retains the RFC to perform light work—with several additional physical limitations—consisting of "simple, repetitive and routine tasks but not at production pace." Tr. 14. The ALJ found that Plaintiff "can make simple work-related decision[s], can occasionally respond appropriately to supervisors and coworkers but can never work with the public." Tr. 14.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 17. At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform, and therefore, the ALJ concluded that Plaintiff is not disabled. Tr. 17-18.

**II.    Analysis**

Plaintiff argues that the ALJ erred in giving the opinion of Plaintiff's treating psychiatrist Kalaiselvi Rajendran, MD "less weight." Tr. 16. The Court agrees.

An ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); 20 C.F.R.

---
[3] Plaintiff's physical impairments are not at issue in this appeal.

3

§ 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6); 20 C.F.R. § 416.927(c)(1)-(6).

The ALJ here failed to give good reasons for discounting the opinion of Plaintiff's treating psychiatrist, Dr. Rajendran, who opined on May 5, 2017 that Plaintiff would retain "no useful ability to function" in any area of mental or social functioning. Tr. 418-23. Specifically, Dr. Rajendran diagnosed Plaintiff with anxiety, depression, and PTSD, and identified that Plaintiff suffered from the following symptoms: anhedonia, appetite disturbance, decreased energy, impulse control impairment, mood disturbance, difficulty concentrating, aggressivity, emotional withdrawal or isolation, hallucinations, sleep disturbance, and panic, among others. Tr. 418-19. Accordingly, Dr. Rajendran opined that Plaintiff would not be able to concentrate, perform tasks, or deal with stress or people, rendering him unable to work. Tr. 419-21.

The ALJ did not credit Dr. Rajendran's opinion that Plaintiff "has no useful ability to perform even the most basic of mental activities" because it was apparently "not consistent with

4

either the claimant's report, the consultative examination, or with his admitted activities and his physical treatment records."[4] Tr. 16. Essentially, the ALJ discounted Dr. Rajendran's opinion because the ALJ determined that the opinion was inconsistent with the rest of the evidence in the record. Although the Court acknowledges the sweeping nature of Dr. Rajendran's opinion, the ALJ was wrong to give it little weight and remand is required. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (quoting another source).

The record reveals that Dr. Rajendran evaluated Plaintiff's mental health at least twelve times over the course of nearly two years. Tr. 349-51, 347-48, 345-46, 343-44, 342, 340, 337, 335-36, 333-34, 332, 327, 418-21. Each time, Dr. Rajendran commented on Plaintiff's anxiety and PTSD. For example, on August 4, 2015, Plaintiff reported panic attacks related to his time in prison from 1999 to 2004 and the tragic and untimely death of several family members. Tr. 349. Dr. Rajendran noted that Plaintiff had poor insight and judgment and tense mood and affect but average intellectual functioning. Tr. 350. Several months later, on October 26, 2015, Plaintiff presented as pleasant and cooperative but continued to be overwhelmed and have poor insight. Tr. 346. That winter, Plaintiff reported feeling depressed and anxious and noted that he was isolating himself from family members. Tr. 343-44. And that spring, Plaintiff felt "very down" as he recounted the deaths of several close family members. Tr. 337-40. Although Plaintiff occasionally reported doing well with several medications, his functional level continued to be marginal (Tr. 332), and Plaintiff repeatedly indicated that he distanced himself from other people and felt

---

[4] The Court is not clear how Plaintiff's physical treatment records are relevant to his mental health findings, how the two—presumably addressing different impairments—could be inconsistent, or why the physical treatment records trump records from Plaintiff's treating mental health provider.

uncomfortable in public, even in very small groups. Tr. 327, 336. These contemporaneous treatment records from Dr. Rajendran tend to support—not contradict—Dr. Rajendran's opinion.

The ALJ also sought to discredit Dr. Rajendran's opinion by pointing to apparently contradictory or inconsistent statements from consultative evaluator Janine Ippolito, Psy. D., whose opinion the ALJ gave "great weight" (Tr. 16), and from Plaintiff himself, who, elsewhere in the decision, the ALJ found to be not entirely credible. Tr. 16. Dr. Ippolito's opinion—that Plaintiff could maintain a regular schedule, work with stress, perform simple and complex tasks independently, and relate adequately with others (Tr. 275)—is belied by the treatment records described above. The consultative opinion was rendered in April 2015, seemingly before Plaintiff began seeing Dr. Rajendran and *over two years before* Dr. Rajendran's opinion, leaving open the significant possibility that Plaintiff's mental health status had deteriorated in that time period. More fundamentally, Dr. Ippolito's consultative opinion, based exclusively on one examination, is not entitled to the presumptive weight afforded to opinions from treating physicians, like Dr. Rajendran. Under these circumstances, the ALJ's use of Dr. Ippolito's opinion to discount Dr. Rajendran's opinion is specious at best.

So too is the ALJ's twisting of Plaintiff's reports of daily activity to support his preferred RFC.[5] It is true that Plaintiff reported that he could perform a number of household tasks like cooking, doing laundry, shopping, and managing his finances. Tr. 181-84. But Plaintiff repeatedly admitted to having significant difficulties performing tasks outside of the home. Indeed, he recounted instances in which he had trouble leaving the house for fear of someone hurting him (Tr. 340, 348), or reacted inappropriately or anti-socially while out (Tr. 327, 331-32, 336). These

---

[5] The ALJ also faults Plaintiff for not seeking mental health treatment until August 2015, "well after his alleged onset date," in an attempt to discredit his self-reporting. Tr. 15. This is neither true nor fair. Plaintiff sought treatment while incarcerated from 1999 to 2004 and was hospitalized for suicidal ideation as far back as 1996. Tr. 272.

reports are consistent with Dr. Rajendran's findings that Plaintiff would be significantly more limited in areas of mental and social functioning than the ALJ would have allowed.

The ALJ's rejection of Dr. Rajendran's opinion was not harmless error because it could have changed the outcome of the case. The RFC allows Plaintiff to perform simple, repetitive work and limited interactions with the public. It further provided that Plaintiff would be able to "occasionally respond appropriately to supervisors and coworkers." Tr. 14. But Dr. Rajendran's opinion would have limited Plaintiff's ability to perform virtually all work involving social interactions, including interactions with supervisors and coworkers. Consequently, remand is required.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 14) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 16) is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 23, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court